UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| OSCAR BENJAMIN LOYA,<br><br>                Petitioner,<br>v.<br><br>Tim Garrett, *et al.*,<br><br>                Respondents. | Case No. 3:22-cv-00309-MMD-CLB<br><br>ORDER |

## I.  SUMMARY

Petitioner Oscar Benjamin Loya ("Loya"), a Nevada state prisoner, filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 34.) This habeas matter is before the Court on Respondents' renewed motion to dismiss (ECF No. 58 ("Respondents' Motion")) and Loya's motion for leave to conduct discovery (ECF No. 62 ("Loya's Motion")). For the reasons discussed below, Respondents' Motion is granted in part and denied in part. Loya's Motion for Discovery is granted in part.

## II.  BACKGROUND

Loya challenges a 2019 judgment of conviction imposed by the Eighth Judicial District Court for Clark County. The state district court appointed Jess Matsuda ("Matsuda") to represent Loya. At calendar call, Matsuda informed the state district court that the State extended a plea offer to Loya wherein Loya would be sentenced under the small habitual criminal statute in exchange for pleading guilty of failing to stop upon the signal of a police officer and burglary charges. Loya moved to dismiss his appointed counsel and requested a continuance of the trial date, which the state district court denied.

On the second day of trial, Loya pled guilty to possession of a stolen vehicle, failure to stop upon the signal of a police officer, burglary, and possession of burglary tools, without any negotiation. The trial continued on the remaining count of trafficking in a

controlled substance and the jury found Loya guilty. The state court entered a judgment of conviction pursuant to a jury verdict of trafficking in a controlled substance as well as a judgment of conviction pursuant to a guilty plea of possession of a stolen vehicle, failure to stop upon the signal of a police officer, burglary, and possession of burglary tools.

Loya again moved to dismiss Matsuda as counsel, which the state district court granted. The state district court appointed Gary Modafferi to represent Loya and Loya filed a motion to withdraw his guilty plea. The state district court denied his motion. The state court adjudicated Loya as a large habitual criminal and sentenced him to four concurrent terms of 10 to 25 years on all counts. The Nevada Court of Appeals affirmed the judgement of conviction.

Loya filed a state petition for writ of habeas corpus. The Nevada Court of Appeals affirmed the state court's denial of relief. Loya initiated this federal habeas corpus proceeding *pro se*. (ECF No. 1-1.) Following the appointment of counsel, he filed his first amended petition raising ineffective assistance of counsel claims. (ECF No. 34.) Respondents filed a motion to dismiss arguing all grounds except one were untimely and do not relate back to the original petition and that certain grounds were not cognizable. (ECF No. 49.) Loya filed a motion to strike Respondents' motion. (ECF No. 51.) The Court granted Loya's motion to strike and allowed Respondents to file a renewed motion specifically explaining their untimeliness argument and any relation back arguments on a claim-by-claim basis. (ECF No. 54 at 3.) Respondents renew their motion to dismiss Loya's first amended petition as untimely, unexhausted, not cognizable, and duplicative. (ECF No. 58.)

### III.  DISCUSSION

#### A.  Cognizability Under *Tollett*

In Ground 1(A), Loya alleges trial counsel rendered ineffective assistance for failing to provide adequate advice about the plea offer of two to five years. In Grounds 1(B) and 1(C), Loya alleges that trial counsel was ineffective for failing to adequately advise him regarding the five to 12 year plea offer following the lapse of the two to five

2

year plea offer. Respondents move to dismiss Grounds 1(A), (B), and (C) arguing that such claims are not cognizable under *Tollett v. Henderson*, 411 U.S. 258 (1973) because the claims allege pre-plea errors.

In *Tollett*, the Supreme Court of the United States held that "when a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." 411 U.S. 258, 267 (1973). A petitioner may only attack the voluntary and intelligent nature of the guilty plea. *Id.*

An exception to this general rule is "that a habeas petitioner may 'attack the voluntary and intelligent character of the guilty plea' based on pre-plea ineffective assistance of counsel 'by showing that the advice he received from counsel was not within the 'range of competence demanded of attorneys in criminal cases.'" *Mahrt v. Beard*, 849 F.3d 1164, 1170 (9th Cir. 2017) (citing *Tollett*, 411 U.S. at 267-69). The court in *Mahrt* clarified that this exception to the *Tollett* bar is not limited to incompetent advice from counsel and extends to instances in which "the action, or inaction of counsel prevent[ed] petitioner from making an informed choice whether to plead." *Id.* In *Missouri v. Frye*, 566 U.S. 134 (2012) and *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court concluded that despite the lack of a right to a plea offer and the ultimate receipt of a fair trial, a defendant had the right to effective assistance of counsel during pre-trial plea negotiations, including as to plea offers that lapse or are rejected.

Because Loya arguably alleges that his trial counsel's incompetent advice and/or "the action, or inaction, of counsel prevent[ed] [him] from making an informed choice whether to plead," the Court finds that Grounds 1(A), (B), and (C) are not barred under *Tollett*. *Mahrt*, 849 F.3d at 1164.

**B.  Relation Back**

A new claim in an amended petition that is filed after the expiration of the Antiterrorism and Effective Death Penalty Act ("AEDPA") one-year limitation period will

3

be timely only if the new claim relates back to a claim in a timely-filed pleading. Fed. R. Civ. P. 15(c). An untimely amendment properly "relates back to the date of the original pleading" as long as it arises out of the same "conduct, transaction, or occurrence." *Id.* "Relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005).

New claims in an amended habeas petition do not arise out of "the same conduct, transaction or occurrence" as prior claims merely because they challenge the same trial, conviction, or sentence. *Id.* at 661; *Hebner v. McGrath*, 543 F.3d 1133, 1134 (9th Cir. 2008). Rather, to properly relate back, a new claim must arise from the same collection of facts alleged in the earlier petition. *Mayle*, 545 U.S. at 661; *Schneider v. McDaniel*, 674 F.3d 1144, 1151 (9th Cir. 2012) (holding that one shared fact in two divergent legal theories was "not sufficient to conclude that they arise out of a common core of operative facts."). An amended habeas petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type" from those alleged in the timely petition. *Mayle*, 545 U.S. at 650. The Court is "obligated to 'liberally construe[ ] documents filed *pro se*,'" like Loya's original petition. *Ross v. Williams*, 950 F.3d 1160, 1173 n.19 (9th Cir. 2020) (en banc).

Respondents assert that Grounds 1(A), (B), (C), (E), (F), and (G) are untimely because they do not relate back to the claims asserted in Loya's original *pro se* petition. Loya argues that following Respondents' motion for clarification (ECF No. 14), he filed a *pro se* proposed amended petition (ECF No. 18 ("*pro se* petition")) on January 10, 2023, asserting that his claims are timely because they relate back to his *pro se* petitions, specifically the January 10, 2023, proposed amended petition. Respondents agree that the one-year limitation period expired on May 8, 2023, but nonetheless contend that Loya's *pro se* petition was not properly filed under Rule 15(a)(2) and should not be considered in evaluating whether his claims are timely. Considering Rule 15(a)(2)'s requirement that "leave to amend be freely given 'when justice so requires,'" and the liberal construction granted to *pro se* petitioners, the Court will consider Loya's January

4

10, 2023, *pro se* petition as properly filed to evaluate whether the claims he asserted in his counseled petition relate back to his timely-filed petition.

### 1. Ground 1(A)

In Ground 1(A), Loya alleges trial counsel rendered ineffective assistance for failing to provide adequate advice about the plea offer of two to five years. Loya contends that the claim relates back to his *pro se* petition because his *pro se* petition contains allegations that Matsuda only talked to him "at any great length," when he "wanted a rushed decision to take a 5-12 years and frist dail [sic] was a 2-5 years deal the State was offering … This alone is a viable claim as to ineffective counsel." (ECF No. 18 at 4.) His *pro se* petition contains further allegations that trial counsel failed to communicate, visit him, and failed to inform Loya of "imperative developments" in his case. (*Id.* at 6.)

Liberally construing the *pro se* pleading, the Court finds Loya sets out the ineffective assistance of counsel claim as asserted in Ground 1(A). Implicit within Loya's *pro se* petition is the allegation that his attorney failed to advise him regarding the first plea deal of two to five years. Relation back does not require that "the facts in the original and amended petitions be stated in the same level of detail." *Ross*, 950 F.3d at 1168 n.4 (noting that relation back may be appropriate if the later pleading expands or amplifies the facts alleged in the earlier pleading and stating that "[s]ufficient correspondence exists if two claims arise out of the same episode-in-suit."). The factual allegations are tied to the same core operative facts as alleged in Loya's timely *pro se* petition.

### 2. Grounds 1(B) AND 1(C)

In Grounds 1(B) and 1(C), Loya alleges that trial counsel was ineffective for failing to adequately advise him regarding the five to 12 year plea offer following the lapse of the two to five year plea offer. Loya alleges in Ground 1(B) that trial counsel failed to investigate Loya's educational and mental health history accounting for his limitations. Loya contends that the claim relates back to his allegations asserted in his *pro se* petition that trial counsel wanted a "rush decision" on the five to 12 year plea offer, that Loya should only have received two to 12 years, that his trial counsel's ineffectiveness "got

[Loya] 10-25 years." (ECF No. 18 at 4, 12.) He alleged that his counsel failed to "engage in a continuing interactive dialogue with the client concerning all matters that might reasonably be expected to have a material impact on the case," and that trial counsel did not "inform him of imperative developments." (*Id.* at 5, 6.) As for his allegations related to mental health, Loya refers to a motion for modification of sentence that appears to have been filed in state court and is attached to his *pro se* petition, asserting that he "needed help like 'mental health' as [he] stated in open court." (*Id.* at 71.)

The Court finds that partial relation back is in order. The Court's review of the *pro se* petition confirms that it sets out a factual episode corresponding to Loya's allegations in his counseled petition that trial counsel was ineffective for failing to adequately advise him regarding the five to 12 year plea offer. For the allegations that trial counsel failed to investigate Loya's educational and mental health history, however, the Court finds that these allegations do not relate back to the core operative facts of the timely *pro se* petition. Loya's *pro se* petition does not contain allegations asserting ineffective assistance of counsel for failure to investigate Loya's educational and mental health history accounting for his limitations. *Ross* made clear that, for relation back, facts found in documents attached to, and incorporated into, an original petition must support a claim asserted in that petition. *See Ross*, 950 F.3d at 1167 ("If a petitioner attempts to set out habeas claims by identifying specific grounds for relief in an original petition and attaching a court decision that provides greater detail about the facts supporting those claims, that petition can support an amended petition's relation back." (emphasis added)); *see also id.* at 1168 ("If an exhibit to the original petition includes facts unrelated to the grounds for relief asserted in that petition, those facts were not 'attempted to be set out' in that petition and cannot form a basis for relation back.")

### 3. Ground 1(E)

In Ground 1(E), Loya alleges trial counsel rendered ineffective assistance for failure to ensure the jury understood the law on possession. Loya asserts that his *pro se* allegations referencing broad allegations of trial counsel ineffectiveness, such as

allegations that counsel was "so ineffective at trial," was not prepared at trial, never objected at trial, did not share plausible options for a defense strategy, that his trial was unfair, that trial counsel did not call Loya's co-defendant to testify, and did not challenge the chain of custody of the bag of meth found, establish a common core of operative facts sufficient to meet the relation back doctrine. Even liberally construing Loya's *pro se* petition, Ground 1(E) does not relate back. Relation back turns not upon whether claims allege—at an exceedingly broad level—the same legal theory but instead on whether the claims arise from the same core of operative facts. Accordingly, Ground 1(E) does not arise from the same core of operative facts as any claim identified in the *pro se* filings and does not relate back to the *pro se* petition.

### 4. Ground 1(F)

In Ground 1(F), Loya alleges trial counsel rendered ineffective assistance for failure to object to testimony that meth was found in the pool. In their reply, Respondents concede that Ground 1(F) related back to the extent the Court concludes that Loya's *pro se* petition may be considered for relation back purposes. (ECF No. 65 at 20.) Accordingly, the Court finds Ground 1(F) relates back and is timely.

### 5. Ground 1(G)

In Ground 1(G), Loya alleges that trial counsel rendered ineffective assistance for failure to request a mistrial after Loya pleaded guilty to four of the five charges against him during trial. Loya contends that the claim relates back to his allegations asserted in his *pro se* petition that Loya's mid-trial plea was not knowing because of his counsel's actions. Even liberally construing the *pro se* pleadings, there is not enough in the portion of Loya's *pro se* filings cited by counsel to present a claim based on the same core of operative facts. Ground 1(G) does not relate back.

### C.  Duplicative

Respondents argue that Grounds 1(B) and (C) are duplicative. Loya argues that Ground 1(B) differs from Ground 1(C) because it is based on the allegations that trial counsel failed to investigate Loya's educational and mental health history when giving

7

advice regarding the plea offer, and because it relies on newly presented evidence in support of such claim. As discussed above, however, the Court has already concluded that the allegations that trial counsel failed to investigate Loya's educational and mental health history do not relate back to the core operative facts of the timely *pro se* petition and are, therefore, dismissed as untimely. The Court agrees that Ground 1(C) is duplicative of Ground 1(B). Accordingly, Ground 1(C) is dismissed as duplicative.

### D. Exhaustion

A state prisoner first must exhaust state court remedies on a habeas claim before presenting that claim to the federal courts. 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement ensures that the state courts, as a matter of comity, will have the first opportunity to address and correct alleged violations of federal constitutional guarantees. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). "A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts." *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). To satisfy the exhaustion requirement, a claim must have been raised through one complete round of either direct appeal or collateral proceedings to the highest state court level of review available. *O'Sullivan*, 526 U.S. at 844-45; *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (en banc). A properly exhausted claim "'must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief.'" *Woods*, 764 F.3d at 1129 (quoting *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)); *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) (fair presentation requires both the operative facts and federal legal theory upon which a claim is based).

Loya acknowledges that Grounds 1(A), (B), (C), (E), (F), and (G) were not presented to the state courts but argues the claims are technically exhausted as he can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012) to overcome the procedural default. A federal court need not dismiss a claim on exhaustion grounds if it is clear that the state court would find the claim procedurally barred. *See Castille v.*

*Peoples*, 489 U.S. 346, 351 (1989); *see also Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (en banc) ("An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court."). A claim may be considered procedurally defaulted if "it is clear that the state court would hold the claim procedurally barred." *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002). Where a petitioner has "procedurally defaulted" a claim, federal review is barred unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750.

"Generally, post-conviction counsel's ineffectiveness does not qualify as cause to excuse a procedural default." *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019) (citing *Coleman*, 501 U.S. at 754-55). However, in *Martinez*, the Supreme Court created a narrow exception to the general rule that errors of post-conviction counsel cannot provide cause for a procedural default. *See* 566 U.S. at 16-17. "Under *Martinez*, the procedural default of a substantial claim of ineffective assistance of trial counsel is excused, if state law requires that all claims be brought in the initial collateral review proceeding ... and if in that proceeding there was no counsel or counsel was ineffective." *Ramirez*, 937 F.3d at 1241 (citing *Martinez*, 566 U.S. at 17). Nevada law requires prisoners to raise ineffective assistance of counsel ("IAC") claims for the first time in a state petition seeking post-conviction review, which is the initial collateral review proceeding for the purposes of applying *Martinez*. *See Rodney v. Filson*, 916 F.3d 1254, 1259-60 (9th Cir. 2019).

To establish cause and prejudice to excuse the procedural default of a trial-level IAC claim under *Martinez*, a petitioner must show that: (1) post-conviction counsel performed deficiently; (2) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different, and (3) the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. *Ramirez*, 937 F.3d at 1242 (internal quotation omitted). The first and second "cause" prongs of the *Martinez* test are derived from *Strickland v. Washington*, 466 U.S. 668

9

(1984). See *Ramirez*, 937 F.3d at 1241. The Court's determination of the second prong—whether there was a reasonable probability that the result of the post-conviction proceedings would be different—"is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.* (quoting *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798, 819 (9th Cir. 2015) (en banc)). The third "prejudice" prong directs courts to assess the merits of the underlying IAC claim. *See id.* A procedural default will not be excused if the underlying IAC claim "is insubstantial," i.e., it lacks merit or is "wholly without factual support." *Id.* (quoting *Martinez*, 566 U.S. at 14-16).

Here, it is clear that Loya would face multiple procedural bars if he were to return to state court with his unexhausted claims. *See, e.g.*, NRS §§ 34.726, 34.810. Loya advances only *Martinez* as a basis for excusing the anticipatory default of his ineffective assistance of counsel claim. The Court thus reads Loya's opposition as a concession that the only basis for cause as to any of the unexhausted ineffective assistance of trial counsel claims would be *Martinez*, and will consider the remaining grounds technically exhausted on that basis.

The Court defers ruling on whether the remaining grounds are procedurally defaulted given the fact-intensive nature of the claim and Loya's cause and prejudice arguments. The Court finds that these questions are inextricably intertwined with the merits of the claims themselves. Accordingly, the Court will defer a determination on whether Loya can demonstrate cause and prejudice until the time of merits determination. The motion to dismiss the remaining grounds as unexhausted is denied. Respondents may renew the procedural default argument as to the remaining grounds in their answer.

### IV.    MOTION FOR DISCOVERY

Loya moves for leave to conduct discovery, requesting an order requiring (a) the Clark County Detention Center ("CCDC") to disclose phone and visitation logs; and (b) the Clark County District Attorney's ("CCDA") Office to disclose records and/or evidence turned over to the defense, or that should have been turned over to the defense, during

the state court proceedings. (ECF No. 62.) Respondents counter that (1) the motion is premature given that Respondents' motion was pending at the time that Loya filed his motion for discovery, (2) Loya's discovery requests are overbroad and unjustified, and (3) Loya seeks records that are irrelevant to the claims supporting his discovery requests. The Court agrees with Loya in part.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *Earp v. Davis*, 881 F.3d 1135, 1142 (9th Cir. 2018). However, Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." To determine whether a petitioner has established "good cause" for discovery, the court identifies the essential elements of the substantive claim and analyzes whether "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate" entitlement to relief. *Bracy*, 520 U.S. at 908-09; *Roseberry v. Ryan*, 289 F. Supp. 3d 1029, 1034 (D. Ariz. 2018).

The Ninth Circuit has admonished courts not to permit a "fishing expedition" in habeas discovery. *Earp v. Davis*, 881 F.3d at 1144 (affirming district court's denial of further discovery where petitioner's allegations were "too attenuated and too speculative" to make a plausible showing); *Calderon v. U.S. Dist. Court for the N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996) ("[C]ourts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation.").

### A. CCDC Phone Records and Visitation Logs

Loya asserts that these requested materials support the allegations in Grounds 1(A), (B), (C), and (D). Counsel for Loya states that Loya took steps to obtain these records by requesting them directly from CCDC. Loya asserts that call records and visitation logs could support his allegations that counsel rendered ineffective assistance and that counsel only spoke to him at great length during a hearing. Respondents argue

that such logs would only reflect communication while Loya was at CCDC, not accounting for conversations conducted in court. They contend that if discovery is permitted, it should be limited to only attorney call and visitation logs as opposed to "any and all records," as requested by Loya.

The Court finds that Loya has shown good cause for limited discovery. The Court will grant Loya's Motion in part and authorize issuance of a subpoena to CCDC for attorney call and visitation logs related to Loya.

### B.     CCDA Office's Records

Loya asserts these requested materials support the allegations in Grounds 1(A), (B), and (C). Despite requesting the discovery records from Loya's prior attorneys, Loya has not been able to obtain the records. He further notes that aerial video footage of the allege police chase of Loya exists, but that footage was not in the files Loya provided.

As Loya noted, the items sought are not new evidence. Although Respondents argue that Loya fails to state good cause for obtaining the items requested, they do not deny that Loya was legally entitled to these materials.  As such, the Court concludes that Loya has established good cause under Rule 6(a) for the discovery sought. The Court, however, agrees with Respondents that disclosure should be restricted to materials that the prosecution has already disclosed. The CCDA Office may withhold from disclosure materials and information that would not have been subject to discovery in the original state district court case, such as attorney notes, legal research, internal memoranda, etc. The Court therefore grants Loya's Motion in part and authorizes the issuance of a subpoena to the CCDA Office for the copy of discovery it disclosed to trial counsel in Loya's underlying state district court cases.

### V.     CONCLUSION

It is therefore ordered that Respondents' renewed motion to dismiss (ECF No. 58) is granted in part and denied in part. Ground 1(C) is dismissed as duplicative. The portion of Ground 1(B) asserting ineffective assistance for failure to investigate Loya's mental and educational history, Ground 1(E), and Ground 1(G) are dismissed as untimely.

It is further ordered that the Court defers consideration of whether Loya can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012), to overcome the procedural default of Grounds 1(A), the remaining portion of Ground 1(B), and 1(F), until the time of merits review. Respondents may reassert the procedural default arguments with respect to those claims in their answer.

It is further ordered that Petitioner's motion for leave to conduct discovery (ECF No. 62) is granted in part.

It is further ordered that Petitioner Oscar Benjamin Loya may pursue discovery as follows: (1) subpoena(s) to the Clark County Detention Center for phone/call and visitation logs related to Loya; and (2) subpoena(s) to the Clark County District Attorney's Office for records and/or evidence that the office turned over to the defense, or should have been turned over to the defense, during the state court proceedings related to Eighth Judicial District Court Case Nos. C-18-333740-1 and A-21-832168-W and Las Vegas Justice Court Case No. 18F12773A.

It is further ordered that Loya will file a status report upon completion of discovery or within 60 days, whichever is earlier.

It is further ordered that Loya will have until October 30, 2025, to file his answer.

It is further ordered that Respondents have 30 days after service of the answer to file their reply.

DATED THIS 7th Day of August 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE